# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JOHN DOE S.B.,                )
                              )
        Plaintiff,         )
                              )
v.                            )
                              )  Case No. 16-2575
UNITED STATES OF AMERICA and  )
MARK WISNER,                  )
                              )
        Defendants.        )
_____)

## MEMORANDUM AND ORDER

This case is one of nearly one hundred cases brought by veterans against the United States of America and Mark Wisner. The veterans involved—including plaintiff John Doe S.B.—sought treatment at the Dwight D. Eisenhower VA Medical Center ("VA") located in Leavenworth, Kansas. Wisner was a physician's assistant for the VA. In that capacity, Wisner treated and provided medical care for veterans, including plaintiff. But Wisner did not only provide medical care; on countless occasions, he also conducted improper and unnecessary physical examinations of the veterans' genitals and recta and made inappropriate sexual comments during medical appointments. Since the filing of these civil cases, Wisner has been convicted in the Leavenworth County District Court of criminal sodomy, aggravated sexual battery, and sexual battery. He is currently serving a sentence of over fifteen years in prison.

The court has already reviewed the allegations in this case (and all other connected cases) on a motion to dismiss filed by defendant United States. After considering that motion, the only claim remaining in this case is for medical malpractice – negligence. Like other veterans treated by Wisner,

plaintiff brings his claim against defendant United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 and 38 U.S.C. § 7316(a), (f).

This matter is before the court on defendant United States of America's Motion for Summary Judgment (Doc. 29). Defendant asks the court to grant summary judgment on two grounds: (1) Wisner was not acting within the scope of his employment; and (2) because Wisner's actions were intentional, they are barred by the FTCA. For the following reasons, the court denies the motion.

### I. Factual Background

The uncontroverted facts in this case are disheartening. Unfortunately, they are nearly the same facts as those in the other related civil suits before this court. Highly summarized, Wisner was employed by the VA from September 28, 2008 through June 28, 2014. During that time, he saw between 750 to 1,000 patients. The VA employed Wisner, in part, to conduct physical examinations of patients, which may have involved sensitive, intimate, or uncomfortable matters. Wisner conducted medically-documented examinations of plaintiff in an exam room at the Leavenworth VA facility, while the facility was open and operating. Wisner's medically-documented genital exams were part of his overall physical examinations. At least some portions of the medical care that Wisner provided plaintiff was for a valid medical purpose—to provide diagnostic care. Other portions were not for valid medical purposes.

Plaintiff claims that during a medical examination on September 19, 2013, Wisner inserted his fingers into plaintiff's rectum without wearing gloves. Wisner did not explain to plaintiff why he did this. Plaintiff testified at his deposition that "[a]t the time – I can honestly tell you that at the time that this exam happened I knew there was something weird about the exam, that something was off and not right."

-2-

The record contains a VA Office of Inspector General ("OIG") memorandum memorializing a January 23, 2015 interview with Wisner, conducted by OIG Special Agent Baker and Lt. Detective Joshua Patzwald of the Leavenworth County Sheriff's Office. The memorandum does not mention plaintiff's name; it contains primarily general statements. It was also written before plaintiff filed an administrative claim. The memorandum reflects the following "admissions" by Wisner:[1]

- Wisner crossed the professional line in providing purported genital exams to patients.
- Wisner knew that what he was doing to patients was wrong and that he lacked self-control.
- Wisner provided genital exams to satisfy his own curiosity.
- For his own pleasure, Wisner performed genital exams on patients when they were not medically indicated or necessary.
- Wisner chose his victims, who were attractive and had a similar body type.
- To avoid getting caught, Wisner falsified medical records, including failing to document multiple genital exams.

**II.    Standard of Review**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**III.    Discussion**

    A.    <u>Scope of Employment</u>

---

[1] Note that these "admissions" have only been recorded in the OIG Memorandum of Interview. When Wisner appeared for deposition in these cases, he invoked his Fifth Amendment right to remain silent.

-3-

Defendant first argues that Wisner's conduct was not within the scope of his employment. The court addressed this issue previously, when ruling on defendant's motion to dismiss. Defendant argues that while plaintiff's allegations may have been enough to survive dismissal, the evidence produced during discovery now conclusively shows that Wisner was not acting within the scope of his employment.

Under the FTCA, the United States is liable only for tortious acts committed by employees "acting within the scope of [their] office or employment." 28 U.S.C. § 1346(b)(1). "Scope of employment" is determined by the law of the place where the accident occurred. *Fowler v. United States*, 647 F.3d 1232, 1237 (10th Cir. 2011); *see also* 28 U.S.C. § 1346(b)(1). In Kansas, an employee acts within the scope of his employment when (1) he performs services for which he has been employed, or (2) he does anything reasonably incidental to his employment. *O'Shea v. Welch*, 350 F.3d 1101, 1103 (10th Cir. 2003) (citing Pattern Instructions Kansas 3d 107.06; *Williams v. Cmty. Drive-In Theater, Inc.*, 520 P.2d 1296, 1301–02 (Kan. 1974)). The test is not whether the employer expressly authorized or forbid the conduct. *Id.* Instead, the court asks whether the employer should have fairly foreseen the conduct from the nature of the employment and the duties relating to it. *Id.*; *see also Commerce Bank of St. Joseph, N.A. v. State*, 833 P.2d 996, 999 (Kan. 1992). Scope of employment is generally a factual determination, but the court may resolve this question as a matter of law when only one reasonable conclusion can be drawn from the evidence. *See Wayman v. Accor N. Am., Inc.*, 251 P.3d 640, 646 (Kan. Ct. App. 2011) (citing *O'Shea*, 350 F.3d 1101).

As he previously argued, plaintiff claims that Wisner's conduct was within the scope of his employment because it was a "slight deviation" from his duties. In *O'Shea v. Welch*, the Tenth Circuit reviewed the Kansas jury instruction on scope of employment, and determined that it is compatible with the slight deviation analysis. *O'Shea*, 350 F.3d at 1106. "Application of the slight deviation

-4-

analysis allows for more flexibility and accuracy in the application of the law to each fact scenario. The Kansas pattern jury instruction[] . . . does not express a bright-line rule but instead illustrates a type of slight deviation rule which requires a determination of what is reasonably incidental to employment and what conduct should have been fairly foreseen." *Id.*

Under the slight deviation analysis, an employee could pursue dual purpose ventures without the conduct amounting to an entire departure from the scope of employment. *Id.* at 1107. "An employee does not cease to be acting within the course of his employment because of an incidental personal act, or by slight deflections for a personal or private purpose, if his main purpose is still to carry on the business of his employer. Such deviations which do not amount to a turning aside completely from the employer's business, so as to be inconsistent with its pursuit, are often reasonably expected and the employer's assent may be fairly assumed." *Id.*

The court reviews the following factors to determine whether an employee has engaged in a slight or substantial deviation: (1) the employee's intent; (2) the nature, time, and place of the deviation; (3) the time consumed in the deviation; (4) the work for which the employee was hired; (5) the incidental acts reasonably expected by the employer; and (6) the freedom allowed the employee in performing his job responsibilities. *Id.* at 1108 (citation omitted).

Applying these factors, the court determines that an issue of fact remains as to whether Wisner engaged in a slight deviation. The court will not discuss full application of the factors here. Defendant bears the burden of showing it is entitled to summary judgment, and defendant has not discussed the factors in detail. Rather, defendant merely focuses on Wisner's intent and the fact that defendant did not hire Wisner to sexually molest patients—a fact that seems rather obvious. Defendant also discusses non-binding cases that made findings such as "an employer will not be held liable as a matter of law merely because the employment situation provided the opportunity for the servant's wrongful

acts or the means to carry them out." *Bodin v. Vagshenian*, 462 F.3d 481, 486–87 (5th Cir. 2006); *see also Barsamian v. City of Kingsburg*, 597 F. Supp. 2d 1054, 1068 (E.D. Cal. 2009) ("That the employment brought the tortfeasor and victim together in time and place is not enough.").

The error that defendant makes is treating the situation as if Wisner did not conduct the unnecessary and improper examinations in the context of a longer medical appointment. It is tempting to regard Wisner's conduct as non-incidental because of (1) the number of victims involved; (2) Wisner's conviction for the same conduct; and (3) Wisner's recorded admissions of intent. But the evidence shows a triable issue regarding whether Wisner's actions were incidental given the time, place, intent, and context of his improper actions. The court will make this determination at trial.

### B. Intentional Torts/VA Immunity

Defendant next argues that 28 U.S.C. § 2680(h) bars plaintiff's claims because the FTCA does not apply to claims arising out of a battery. The FTCA exempts from the waiver of sovereign immunity "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). Under the FTCA's general provisions, the United States remains immune for claims arising out of these enumerated intentional torts. *See id.*

Again, however, plaintiff argues that the VA Immunity Statute applies, which essentially creates an "exception to the exception." This law allows for a remedy against the United States under the FTCA for damages arising from the provision of medical services by health care employees of the VA under 38 U.S.C. § 7316(a)(1), (f). *Ingram v. Faruque*, 728 F.3d 1239, 1245–46 (10th Cir. 2013) ("'[Section] 2680(h) does not bar application of the FTCA to [intentional] tort claims arising out of the conduct of VA medical personnel within the scope of' 38 U.S.C. § 7316(f).") (citation omitted).

Once again, the court determines that a genuine issue of fact remains as to whether the VA Immunity statute applies. In support of its argument, defendant primarily relies on Tenth Circuit law identifying the purpose of the VA Immunity statute. In *Franklin v. United States*, 992 F.2d 1492, 1500 (10th Cir. 1993), the Tenth Circuit stated, "In some instances, State law characterize[d] an act of medical malpractice as an intentional tort, leaving VA medical personnel potentially liable for an action for which the law intends the Government to assume liability." *See* H.R. Rep. No. 100-191, 100th Cong., 2d Sess. 19 (1988), *reprinted in* 1988 U.S.C.C.A.N. 432, 450.

But while fixing an inconsistent tort-characterization problem may have been a driving force behind the VA Immunity Statute, the language of the statute itself does not limit its waiver to claims of medical battery. *See Ingram*, 728 F.3d at 1249. The statute covers any claim arising out of the provision of VA medical services—not just medical batteries:

> Although Congress was specifically concerned with medical battery, the remedy available under § 7316(f) is not limited to battery. Instead, by rendering 28 U.S.C. § 2680(h) inapplicable, § 7316(f) allows the United States to be sued for "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," . . . Thus, in the context of VA health care employees providing medical care or treatment, § 7416(f) provides a remedy under the FTCA for claims of intentional torts, including false arrest and false imprisonment.

*Id*.

Defendant also argues that even if the statute extends beyond medical battery, it still contains the requirement that any battery must be committed by VA personnel "in furnishing medical care or treatment." 38 U.S.C. § 7316(f). According to defendant, Wisner was most certainly not "furnishing medical care or treatment" when he sexually molested plaintiff. But once again, defendant would have this court, as a matter of law, look only at Wisner's discrete act of conducting improper genital and rectal examinations—not the surrounding actions of conducting a medical appointment. Despite Wisner's admissions during his OIG interview, there remains a gray area around what actions

-7-

constituted providing medical care and what actions were entirely unnecessary and improper.  In deciding what constitutes "furnishing medical care or treatment," the court does not use the Kansas test for scope of employment; defendant is correct on this count.  *But cf. Ingram*, 728 F.3d at 1248–49 (discussing relevant acts of VA employees as those taken "within the scope of their employment") (quoting *Franklin*, 992 F.2d at 1500).  But this does not mean that, as a matter of law, Wisner's improper actions were not taken in the context of delivering medical care or treatment.  This question is reserved for the court as the trier of fact.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Doc. 29) is denied.

Dated this 6th day of January, 2020, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**